UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEATH BARTYNSKI,

       Plaintiff,

v.

CITY OF HIGHLAND PARK, MICHIGAN,

       Defendant.

_____/

Case No. 21-10049

HON. MARK A. GOLDSMITH

**OPINION & ORDER
DENYING DEFENDANT'S MOTION TO DISMISS (Dkt. 11)**

This matter is before the Court on Defendant City of Highland Park's motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 11). For the reasons stated below, the Court denies the motion.[1]

**I. BACKGROUND**

Plaintiff Keath Bartynski brings this 42 U.S.C. § 1983 action against Defendant City of Highland Park. Am. Compl. (Dkt. 9). The allegations stem from Bartynski's involvement in the arrest of Gregory Yopp, the adult son of the City's Mayor. Id. ¶ 9. Bartynski, a former City police officer, alleges that he was subject to a hostile work environment and disparate working conditions due to (i) his arrest of Yopp and (ii) testimony about his role in the arrest that he gave as a subpoenaed witness in a retaliation action another police officer brought against the City. Id. ¶¶ 9–10, 72. He states that such hostile and disparate working conditions included multiple frivolous internal investigations, threats of termination and criminal prosecution, and attempts to decertify

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion, the briefing includes Bartynski's response (Dkt. 12) and the City's reply (Dkt. 13).

him as a police officer. Id. ¶ 68. Bartynski alleges that, because of these conditions, he was forced to resign from employment as a police officer. Id. ¶ 69.

Bartynski brought this action, asserting violations of the First and Fourteenth Amendments. He states that the City violated the First Amendment by retaliating against him for exercising his right to give truthful testimony. Id. ¶¶ 9, 95. He also states that the City violated his procedural and substantive due process rights by depriving him of his liberty and property interest in his employment. Id. ¶¶ 96–99.

## II. ANALYSIS[2]

The City argues that Bartynski's claims should be dismissed for two reasons. First, he has failed to establish an underlying First Amendment or due process violation. Mot. at 6–11. Second, there is no Monell liability because his alleged damages were not caused by an official policy or custom of the City. Id. at 11–16. The Court addresses each argument in turn.

### A. Allegations of Underlying Constitutional Violations

The Court discusses Bartynski's First Amendment retaliation claim and then discusses his procedural and substantive due process claims.

#### 1. First Amendment Retaliation Claim

For a public employee to establish a claim of First Amendment retaliation, the employee must show that (i) he or she engaged in constitutionally protected conduct, (ii) his or her employer took an adverse action against the employee that would deter an ordinary person from engaging in that

---

[2] To survive a motion to dismiss, a plaintiff must allege "facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court is required to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). The defendant has the burden of showing that the plaintiff has failed to state a claim for relief. Id.

conduct, and (iii) the adverse action was motivated at least in part by the employee's protected conduct. Scarbrough v. Morgan Cnty. Bd. of Educ., 470 F.3d 250, 255 (6th Cir. 2006).

For purposes of its motion to dismiss, the City concedes that Bartynski has adequately plead the second and third elements of a First Amendment retaliation claim. Mot. at 7 n.2. It argues that Bartynski has not established the first element, asserting he was not engaged in constitutionally protected conduct because he was not speaking as a citizen when he arrested Yopp or spoke about Yopp. Id. at 9.

For a government employee's speech to warrant First Amendment protection, the employee must have spoken as a citizen on a matter of public concern. McMurphy v. City of Flushing, 802 F.2d 191, 197 (6th Cir. 1986). While citizen speech may trigger protection, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006).

Courts must look to the content and context of the plaintiff's speech to determine whether the plaintiff spoke as a citizen or spoke pursuant to professional duties. Fox v. Traverse City Area Pub. Sch. Bd. of Educ., 605 F.3d 345, 348 (6th Cir. 2010). The United States Supreme Court has held that a public employee's truthful testimony under oath outside the scope of ordinary job duties is citizen speech. Lane v. Franks, 573 U.S. 228, 238 (2014). It has explained that "[s]worn testimony in judicial proceedings is a quintessential example of speech as a citizen for a simple reason: Anyone who testifies in court bears an obligation, to the court and society at large, to tell the truth." Id. Thus, when a witness is a public employee, any obligations that the testifying employee owes to his or her employer are "distinct and independent from the obligation, as a citizen, to speak the truth." Id. at 239. That distinct and independent obligation "renders sworn

3

testimony speech as a citizen and sets it apart from speech made purely in the capacity of an employee." Id.³

The City contends that Bartynski was not engaged in citizen speech because he made the underlying statements while he was on the clock as a public employee and, but for his first-hand experience in arresting Yopp, he would not have any relevant information to report up the chain of command. Mot. at 9. However, in Lane, the Supreme Court rejected the circuit court's determination that, because the employee learned of the subject matter of his testimony in the course of his employment with the City, his speech was not citizen speech under Garcetti. 573 U.S. at 239. It contrasted the subpoenaed testimony with the speech at issue in Garcetti, which involved an internal memorandum that a deputy district attorney prepared for his supervisors and in which he recommended the dismissal of a particular case. Id. The Court explained that "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." Id. at 240. Rather, the "critical question under Garcetti" is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." Id.

Bartynski alleges that he was employed as a sergeant with the City's police department and that his duties included performing arrests, following the orders of his supervisor in helping to secure an arrest warrant for Yopp, and transporting Yopp to the hospital for a blood draw pursuant to a search warrant. Am. Compl. ¶¶ 17, 42–43. He also alleges that the speech at issue is sworn

---

³ In arguing that Bartynski did not engage in citizen speech, the City relies on Weisbarth v. Geauga Park Dist., 499 F.3d 538 (6th Cir. 2007) and Housey v. Macomb Cnty., 534 F. App'x 316 (6th Cir. 2013). But neither case involved subpoenaed testimony. In Weisbarth, the public employee made comments about morale and performance issues to a consultant that her employer hired to interview employees as part of a departmental evaluation. 499 F.3d at 542. And in Housey, a probate court employee reported misconduct to a division of the Michigan Supreme Court. 535 F. App'x at 322.

testimony that he provided as a subpoenaed witness in an action that another police officer brought against the City under Michigan's Whistleblower Protection Act (WPA). Id. ¶ 59. Bartynski states that he testified in part that he and other officers were retaliated against because of their involvement in the arrest of Yopp. Id. ¶ 49. The Court concludes that Bartynski has alleged sufficient facts to justify an inference that he spoke as a citizen. Therefore, the City is not entitled to dismissal of Bartynski's First Amendment claim.

### 2. Procedural Due Process Claim

The City argues that Bartynski has failed to state a procedural due process claim for which relief can be granted because Bartynski's employment was governed by a collective bargaining agreement, and the availability of a grievance/arbitration process satisfies the requirements of procedural due process. Mot. at 10–11.

The collective bargaining agreement is not referenced in Bartynski's complaint. See Armengau v. Cline, 7 F. App'x 336, 344 (6th Cir. 2001) ("If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings."). And the City does not indicate that the agreement is a matter of public record. See Commercial Money Ctr., Inc. v. Ill. Union Ins. Co., 508 F.3d 327, 336 (6th Cir. 2007) ("A court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment."). Therefore, considering the collective bargaining agreement would convert the motion to dismiss into a motion for summary judgment. Armengau, 7 F. App'x at 345 ("The plain language of Rule 12(b) and this court's application of it requires that when a court looks beyond the pleadings and materials appended to or incorporated in it by reference, the court must convert the motion to one for summary judgment."). The Court declines to convert the motion to dismiss into a motion for summary judgment when there has been insufficient factual development. In

5

particular, there has been no factual development at this stage about why the collective bargaining agreement is sufficient to satisfy the requirements of procedural due process or what rights Bartynski may have under the agreement. Therefore, the City is not entitled to dismissal of Bartynski's procedural due process claim on the ground that the collective bargaining agreement provided Bartynski with sufficient due process.

### 3. Substantive Due Process Claim

Substantive due process claims "often fall into one of two categories:" (i) "claims that an individual has been deprived of a particular constitutional guarantee," and (ii) "claims that the government has acted in a way that shock[s] the conscience." Handy-Clay v. City of Memphis, Tenn., 695 F.3d 531, 547 (6th Cir. 2012) (punctuation modified).

Bartynski alleges that he "had a liberty and property interest in his position as a police sergeant with the Defendant's Highland Park Police Department." Am. Compl. ¶ 7. He alleges that the Due Process Clause protects his choice of career and occupation. Id. ¶ 8.

Substantive due process under the Fourteenth Amendment bars "certain government actions regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331 (1986). The Sixth Circuit has "recognized that the Fourteenth Amendment has a substantive due process component that protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action." Sutton v. Cleveland Bd. of Educ., 958 F.2d 1339, 1350 (6th Cir.1992). "Absent the infringement of some 'fundamental' right," however, it has held that "the termination of public employment does not constitute a denial of substantive due process." Id. at 1351; see also Houchens v. Beshear, 850 F. App'x 340, 343–344 (6th Cir. 2021) (explaining that "the right to maintain public employment [is not] . . . a substantive due process right specifically protected under the Fourteenth Amendment").

6

An employee's right to be discharged only for cause does not implicate substantive due process protections. Hange v. City of Mansfield, Ohio, 257 F. App'x 887, 896 (6th Cir. 2007). "[A]reas in which substantive rights are created only by state law (as is the case with tort law and employment law)" are not subject to substantive due process protection because "substantive due process rights are created only by the Constitution." Young v. Township of Green Oak, 471 F.3d 674, 684 (6th Cir. 2006) (punctuation modified). Such state-law-based rights may be rescinded as long as the elements of procedural—but not substantive—due process are observed. Id. Accordingly, Bartynski's interest in continued employment is not a fundamental interest that substantive due process protects.

However, Bartynski's substantive due process claim may survive a motion to dismiss if he plausibly alleges conscience-shocking conduct. The Sixth Circuit has "recognize[d] the difficulty of determining where conscience-shocking behavior resides on the continuum of actions." Range v. Douglas, 763 F.3d 573, 590 (6th Cir. 2014). "Merely negligent tortious conduct is categorically beneath constitutional due process; but conduct on the other extreme end of the culpability spectrum, that which is intended to injure without any justifiable government interest, most clearly rises to the conscience-shocking level." Id. Conduct that is more akin to recklessness or gross recklessness, such as deliberate indifference, is a "matter for closer calls." Id. The Sixth Circuit has also explained that the determination of whether conduct shocks the conscience is fact specific. See Ewolski v. City of Brunswick, 287 F.3d 492, 510 (6th Cir. 2002) (explaining that the analysis "depends upon the facts and circumstances of the individual case"); M.S. by Covington v. Hamilton Cnty. Dep't of Educ., 756 F. App'x 510, 517 (6th Cir. 2018) (explaining that the "concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before making that determination") (punctuation modified).

Bartynski alleges that, due to his involvement in Yopp's arrest and his testimony in an officer's WPA action against the City in which he described experiencing retaliation, he was threatened with criminal prosecution, subjected to multiple frivolous internal investigations, and subjected to attempts to decertify him as a police officer. Am. Compl. ¶¶ 9, 68. He also alleges that the discriminatory treatment against him was intentional. Id. ¶ 21. And he alleges that multiple police officers were retaliated against and punished for their participation in Yopp's arrest and for giving testimony that was unfavorable to the City. Id. ¶¶ 58, 79. Intentional conduct may fall on the spectrum of conscience-shocking conduct. But because the parties have not engaged in discovery, the Court cannot at this stage conduct the necessary fact-specific determination of whether the alleged conduct shocks the conscience. Therefore, dismissal of Bartynski's substantive due process claim would be premature.

### B. Municipal Liability

The City argues that, even if Bartynski has alleged a violation of his constitutional rights, he has failed to state a municipal liability claim. Mot. at 12.

Under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978), to succeed on a municipal liability claim, a plaintiff must establish that his constitutional rights were violated and that a policy or custom of the municipality was the "moving force" leading to the violation. Miller v. Sanilac Cnty., 606 F.3d 240, 254–255 (6th Cir. 2010). At the pleading stage, Bartynski may establish that the municipality has an unconstitutional policy or custom by alleging facts that show "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013); see also

8

Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (explaining that Monell liability may be established by the act of a single official "where the decisionmaker possesses final authority to establish . . . policy with respect to the action ordered").

Bartynski premises his First and Fourteenth Amendment claims on the "intentional, severe, pervasive" conduct of the Mayor—whom he alleges is a final decisionmaker—that represented the policy of the City. Am. Compl. ¶¶ 21, 78–79, 83. He alleges that, under the City's charter, the Mayor is the chief executive of the City and determines the City's policies, including the day-to-day operations and "all hiring, firing, promotion, working conditions, and discipline" in the City's police department. Id. ¶ 85. He also states that the Mayor acted as a final decision-maker in regard to his employment actions and that the City has a policy of punishing police officers who are involved in the arrest of the Mayor's son and retaliating against police officers who testify regarding the arrest. Id. ¶¶ 76–79, 83.

Under Monell and Pembaur, the Mayor's authority to create policy regarding hiring, firing, promotion, working conditions, and discipline indicates that he can be considered a municipal policymaker. Consequently, the Mayor's alleged action of retaliating against Bartynski through the imposition of hostile work conditions could represent official policy, and Bartynski has plausibly alleged that this policy deprived him of his constitutional rights. Therefore, Bartynski's allegations are sufficient to meet the requirements of Monell at the pleading stage. See Paige v. Coyner, 614 F.3d 273, 284 (6th Cir. 2010) (finding that plaintiff satisfied Monell when her complaint alleged that, in calling her employer and making false statements, the defendant government official "acted pursuant to the official policies of Defendants Warren County Board

of Commissioners and Warren County Port Authority in that [the defendant] has final policy making authority" for those entities).[4]

### III. CONCLUSION

For the foregoing reasons, the Court denies the City's motion to dismiss (Dkt. 11).

SO ORDERED.

Dated: February 8, 2022  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge

---

[4] The City asserts that merely pointing to the existence of other lawsuits containing allegations similar to Bartynski's is not sufficient to establish a prima facie case of municipal liability. Mot. at 13. But three of the four cases it relies on for this proposition involve motions for summary judgment brought after the parties had an opportunity to engage in discovery. See id. at 13–14 (citing Jean-Laurent v. Wilkerson, 461 F. App'x 18, 22–23 (2d Cir. 2012); Jones v. City of New York, No. 12-CV-3658, 2013 WL 6047567, at *13 (E.D.N.Y. Nov. 14, 2013); Gray v. City of Hammond, 693 F. Supp. 2d 823, 834–835 (N.D. Ind. 2010)). And in the fourth case that the City cites, Rhinehart v. Scutt, No. 2:11–CV–11254, 2014 WL 5361936, at *18–*19 (E.D. Mich. June 20, 2014) (Report & Recommendation), the court dismissed an Eighth Amendment claim when the plaintiffs' amended complaint did not allege that any individual defendant had final decision-making authority, did not allege any facts that suggested that the relevant entity had a custom of acquiescing to federal civil rights violations on the part of its employees, and, instead, referred in their response to lawsuits brought against the corporation. Here, Bartynski alleges that the Mayor acted as final decision-maker regarding policies on the hiring and firing of police officers in the police department and that he had final decision-making authority over the termination of police officers involved in Yopp's arrest. In any case, what role the other lawsuits implicating the Mayor's alleged actions will play in this lawsuit must await full factual development.