UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEATH BARTYNSKI,

        Plaintiff,                              Case No. 21-10049

v.

                                                  HON. MARK A. GOLDSMITH

CITY OF HIGHLAND PARK, MICHIGAN,

        Defendant.
_____/

**OPINION & ORDER**
**(1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 39)**
**AND (2) DENYING AS MOOT DEFENDANT'S MOTION TO ADJOURN**
**SCHEDULING ORDER DEADLINES (Dkt. 48)**

This matter is before the Court on Defendant City of Highland Park's motion for summary judgment (Dkt. 39). For the reasons stated below, the Court grants the motion.[1]

**I. BACKGROUND**

Plaintiff Keath Bartynski brings this 42 U.S.C. § 1983 action against Defendant City of Highland Park. Am. Compl. (Dkt. 9). Bartynski was employed by the City as a police officer from June 2015 to June 2019. Def. Bartynski Dep. at 9, 34 (Dkt. 39-2); Letter of Resignation (Dkt. 39-4). He alleges that he was retaliated against due to (i) his arrest of Gregory Yopp, the son of the City's former mayor, and (ii) February 2019 testimony that he gave in a retaliation action that another police officer, Ronald DuPuis, brought against the City based on Yopp's arrest. Am. Compl. ¶¶ 9–10, 72. Bartynski asserts that as a result of the arrest and his testimony in DuPuis's

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion, the briefing includes Bartynski's response (Dkt. 44) and the City's reply (Dkt. 45).

Because the Court grants the City's motion for summary judgment, it denies as moot the City's motion to adjourn scheduling order deadlines pending a decision on the motion for summary judgment (Dkt. 48).

Whistleblower Protection Act (WPA) against the City—which was unfavorable for the City—he was subjected to multiple frivolous internal affairs investigations by the City's Director of Internal Affairs, Charles Lackey. Def. Bartynski Dep. at 27; Bartynski Testimony in DuPuis Action at 24–26; 32–34 (Dkt. 44-3); Am. Compl. ¶ 48. He also alleges that the multiple investigations constituted hostile and disparate working conditions and that, in imposing those hostile and disparate working conditions on him, the City deprived him of his liberty and property interest in his employment. Am. Compl. ¶¶ 7–10; 96–99.

In his complaint, Bartynski asserts one count under § 1983 that contains three different claims: (i) a First Amendment retaliation claim, (ii) a substantive due process claim, and (iii) a procedural due process claim. Am. Compl. ¶¶ 94–100.

## II. ANALYSIS[2]

The City argues that it is entitled to summary judgment for two reasons. First, Bartynski cannot establish an underlying constitutional violation. Mot. at 8–17. Second, because he cannot make out a violation of his constitutional rights, Bartynski cannot prevail on his Monell claim. Id. at 18–23.

The Court discusses each claim in turn. It finds that Bartynski has not set forth evidence sufficient to create a genuine issue of material fact that the City violated his First Amendment, substantive due process, or procedural due process rights.

---

[2] In assessing whether either party is entitled to summary judgment, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). The movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986).

**A. First Amendment Retaliation**

For an employee to establish a claim of First Amendment retaliation, the employee must demonstrate that (i) he or she engaged in constitutionally protected speech or conduct; (ii) an adverse action was taken against the employee that would deter a person of ordinary firmness from continuing to engage in that conduct; and (iii) a causal connection between elements one and two exists, i.e., the adverse action was motivated at least in part by the employee's protected conduct. Scarbrough v. Morgan Cnty. Bd. of Educ., 470 F.3d 250, 255 (6th Cir. 2006).

The City contends that Bartynski cannot satisfy the third element. Mot. at 8–15. That element requires the plaintiff to demonstrate "that the speech at issue represented a substantial or motivating factor in the adverse employment action." Rodgers v. Banks, 344 F.3d 587, 602 (6th Cir. 2003). "Specifically, the employee must point to specific, nonconclusory allegations reasonably linking [his or her] speech to employer discipline." Id. (punctuation modified). The United States Court of Appeals for the Sixth Circuit has stated that a "motivating factor" means "essentially but-for cause—without which the action being challenged simply would not have been taken." Vereecke v. Huron Valley Sch. Dist., 609 F.3d 392, 400 (6th Cir. 2010) (punctuation modified). In assessing motive in the context of a motion for summary judgment, "bare allegations of malice [do] not suffice to establish a constitutional claim." Crawford–El v. Britton, 523 U.S. 574, 588 (1998). But "[c]ircumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate." Thaddeus–X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).

The Sixth Circuit has "recognize[d] the central role of the factfinder in retaliation cases where both parties present some facts to support their motivation arguments." Aquilina v. Wriggelsworth, 759 F. App'x 340, 347 (6th Cir. 2018). Nonetheless, it has found that a defendant

3

is entitled to summary judgment even in a causation inquiry when the plaintiff does not produce sufficient evidence from which a jury could draw a reasonable inference of retaliatory motive. Id.

The City asserts that this case is one in which summary judgment is warranted because the record evidence does not support Bartynski's claim that he was retaliated against for his testimony in the DuPuis action or for his arrest of Yopp. Mot. at 9–10. It states that Bartynski does not identify which parts of his deposition were concerning for Mayor Yopp or the City and that he has set forth no evidence that corroborates his belief that, in investigating him, Lackey was acting at the Mayor's direction. Id. at 10. The City points to Mayor Yopp's testimony that he did not know that Bartynski was deposed in the DuPuis action. Id. at 5, 10 n.4 (citing Yopp Dep. at 77 (Dkt. 39-8)). It also points to Lackey's testimony that Mayor Yopp has "never gotten involved in any investigation [that Lackey] has done," but rather, the chief of police may have approved the investigation into Bartynski's involvement in Yopp's arrest. 3/9/23 Lackey Dep. at 32, 43 (Dkt. 39-5).

Bartynski cites several pieces of evidence that he states are sufficient for causation at the summary-judgment stage. Resp. at 11–15. None of this evidence, however, creates a genuine dispute of material fact regarding whether Mayor Yopp—or the chief of police or anyone else employed by the City—was motivated by a desire to retaliate against Bartynski for engaging in protected conduct.[3]

---

[3] Bartynski alleges that his testimony "caused the Mayor" to retaliate against him. Resp. at 5. And in his response, he discusses the mayor's role as Lackey's direct report, the mayor's ability to ask internal affairs to conduct an investigation into a particular officer, and the mayor's involvement in the police department's day-to-day operations. See id. at 7, 12. Bartynski's focus on the mayor suggests that he is alleging that Mayor Yopp is the retaliatory actor. However, Bartynski also discusses in his response how the chief of police can initiate investigations and how internal investigations are reported to the chief of police. See id. at 12. To the extent Bartynski alleges that a City employee other than the mayor displayed retaliatory motive, the evidence does not support such a finding for the reasons stated above.

4

Pointing to his deposition testimony that is attached to his amended complaint, Bartynski emphasizes that, in the DuPuis action, he testified that he was retaliated against for his role in arresting Yopp by being subjected to multiple frivolous investigations. Bartynski Testimony in DuPuis Action at 24–25 (Dkt. 9-2). He also testified that, following his arrest of Yopp, Lackey informed him that internal affairs was investigating all of Bartynski's prior arrests. Id. at 33. According to Bartynski, his testimony was unfavorable to Mayor Yopp and the City—not just because it alleged retaliation but also because it supported DuPuis's WPA suit against the City, which also alleged retaliation. Resp. at 11. Further, Bartynski cites Lackey's testimony that the mayor of the City and the chief of police can ask Lackey to conduct an internal affairs investigation into particular officers and that Lackey reports to the mayor. 5/18/22 Lackey Dep. at 5–7 (Dkt. 44-7). And he alleges that circumstantial evidence of retaliatory motive comes from the fact that four other police officers have alleged that the City retaliated against them for prosecuting Yopp. Resp. at 14.

But none of this evidence would permit a reasonable jury to infer that either the mayor or any City employee subjected Bartynski to investigations in retaliation for his arrest of Yopp or his testimony in the DuPuis suit.[4] Bartynski also produces no evidence to rebut Mayor Yopp's testimony that he did not know that Bartynski was deposed in the DuPuis action. See Green v. Smitherman, No. 98–0675, 2000 WL 210363, at *7 (N.D. Ala. 2000) (finding, in case in which

---

[4] Bartynski argues that the City should be precluded from arguing that there is no evidence that Lackey was acting at the mayor's behest when he investigated Bartynski's arrest and conduct because Lackey failed to produce subpoenaed documents at his deposition. Resp. at 13. Those documents consist of emails that Lackey sent to Yopp about internal affairs investigations that Lackey conducted. Id.; 3/9/23 Lackey Dep. at 8–10; 5/18/22 Lackey Dep. at 7. Bartynski states that, in referencing these emails, Lackey confirmed the existence of documents that show that Lackey was acting at the mayor's direction when he investigated Bartynski. Lackey's statement that he has emails between him and Yopp in connection with internal affairs investigations does not confirm that he has evidence that the mayor directed him to investigate Bartynski. Even if Lackey had such evidence, Bartynski does not explain how it would suggest that Bartynski was investigated in retaliation for protected activity.

police officer alleged that a mayor and police chief retaliated against him for investigating and testifying against the mayor's son, that officer failed to produce sufficient evidence that any actions were taken against him in retaliation for protected speech, in part, because "[t]here is no evidence that either the Mayor or Chief Tate knew what the Plaintiff testified to"). Bartynski has not "established a connection between [his] testimony"—or the arrest—"and any of . . . Defendant['s] actions." Id.

In addition, any temporal connection between either the arrest or Bartynski's testimony and the adverse action does not permit an inference of causation. The Sixth Circuit has explained that "temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim" but that "[t]here are, however, circumstances where temporal proximity, considered with other evidence of retaliatory conduct would be sufficient to establish a causal connection." Tuttle v. Metro. Gov't of Nashville, 474 F.3d 307, 321 (6th Cir. 2007); see also Vereecke, 609 F.3d at 401 ("In analyzing the facts in temporal proximity cases, we have always looked at the totality of the circumstances to determine whether an inference of retaliatory motive could be drawn.").

Here, internal affairs began an investigation of DuPuis and Bartynski regarding their involvement in Yopp's arrest four days after the arrest. Resp. at 16. But that timeline does not permit an inference of retaliatory motive, given that Bartynski does not address Lackey's statement that he received a complaint from Yopp that Bartynski used excessive force during the arrest, and that it was the complaint that prompted Lackey to conduct the investigation. See Lackey Dep. at 14–18. And as noted, the other indicia of causation that Bartynski relies on do not bolster his claim. As far as the other internal affairs investigations that Bartynski contends in his response constitute retaliation, all occurred around 11 months after the arrest or before his testimony. Therefore, temporal proximity for those events is either weak or non-existent—and they are not aided by the other facts Bartynski mentions in his response.

Bartynski's evidence does not permit the inference that the adverse employment actions taken against him were motivated, at least in part, by a desire to retaliate against him for his exercise of his First Amendment rights. Because he has not created a genuine issue of material fact in support of the causation element of his claim, the City is entitled to summary judgment on the First Amendment retaliation claim.

### B. Substantive Due Process Claim

The substantive due process component of the Fourteenth Amendment bars "certain government actions regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331 (1986). Substantive due process claims "often fall into one of two categories:" (i) "claims that an individual has been deprived of a particular constitutional guarantee," and (ii) "claims that the government has acted in a way that shock[s] the conscience." Handy-Clay v. City of Memphis, Tenn., 695 F.3d 531, 547 (6th Cir. 2012) (punctuation modified).

In his complaint, Bartynski alleged that the City violated his procedural and substantive due process rights by depriving him of his liberty and property interest in his employment. Am. Compl. ¶¶ 96–99. But "the right to maintain public employment [is not] . . . a substantive due process right specifically protected under the Fourteenth Amendment." Houchens v. Beshear, 850 F. App'x 340, 343–344 (6th Cir. 2021). Accordingly, Bartynski's interest in continued employment is not a fundamental interest that substantive due process protects.

To survive summary judgment on his substantive due process claim, Bartynski must rely on conscience-shocking conduct by the City. See Resp. at 10 (confirming that Bartynski's claims "are of intentional conduct at the hands of arbitrary and capricious government action"). The right to be free from conscience-shocking actions includes the right to be free from the "arbitrary and capricious" exercise of governmental power. Range v. Douglas, 763 F.3d 573, 588 (6th Cir. 2014); see also Sutton v. Cleveland Bd. of Educ., 958 F.2d 1339, 1350 (6th Cir. 1992 (explaining that the

substantive due process component of the Fourteenth Amendment "protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action"). The Sixth Circuit has "recognize[d] the difficulty of determining where conscience-shocking behavior resides on the continuum of actions." Range, 763 F.3d at 590. "Merely negligent tortious conduct is categorically beneath constitutional due process; but conduct on the other extreme end of the culpability spectrum, that which is intended to injure without any justifiable government interest, most clearly rises to the conscience-shocking level." Id.

Further, the Sixth Circuit has noted that "[g]enerally, the 'shocks the conscience' strain of successful substantive due process claims is recognized 'in the exclusive context of cases involving physical abuse.'" Puckett v. Lexington-Fayette Urban Cnty. Gov't, 566 F. App'x 462, 472 (6th Cir. 2014) (quoting Choate's Air Conditioning & Heading, Inc. v. Light, Gas, Water Div. of City of Memphis, 16 F. App'x 323, 329 (6th Cir. 2001)). The determination of whether conduct shocks the conscience is fact-specific. See Ewolski v. City of Brunswick, 287 F.3d 492, 510 (6th Cir. 2002).

Bartynski argues that he has a viable substantive due process claim simply because the alleged actions by Defendants were intentional. Resp. at 18–19. But intentionality is not sufficient; the acts must "shock the conscience." None of the allegedly actionable conduct involves physical abuse or injury, which the Sixth Circuit has taught is the hallmark of successful substantive due process claims. Puckett, 566 F. App'x at 472. Nor, as Defendants note, see Reply at 5, does Bartynski cite any cases in which courts recognized a substantive due process violation under facts similar to the context of the instant case. Rather, as the City contends, see Mot. at 15–16, this case is a standard employment dispute, and the record lacks any conduct that meets the conscience-shocking-conduct standard. Regarding that dispute and the investigations about which he

complains, Bartynski fails to set forth evidence that the City "engaged in arbitrary conduct lacking any rational basis." Hall v. Meisner, 565 F. Supp. 3d 953, 976 (E.D. Mich. 2021).

Bartynski has not rebutted the City's showing that there is no genuine dispute of material fact as to whether the City engaged in conscience-shocking conduct. The City is entitled to summary judgment on the substantive due process claim.

### C. Procedural Due Process Claim

Bartynski brings a Fourteenth Amendment procedural due process claim, alleging that the City deprived him of his liberty interest and property interest in his employment without any procedural rights. Am. Compl. ¶ 78.

To succeed on a procedural due process claim under § 1983, a plaintiff must establish three elements: (i) that the plaintiff had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (ii) that the plaintiff was deprived of that protected interest within the meaning of the Due Process Clause; and (iii) that the state did not afford the plaintiff adequate procedural rights before depriving him or her of that protected interest. Wedgewood Ltd. P'Ship v. Twp. of Liberty, Ohio, 610 F.3d 340, 354 (6th Cir. 2010).

The City argues that Bartynski cannot establish a procedural due process claim because his employment was governed by a collective bargaining agreement (CBA), and the availability of a grievance and arbitration process satisfies the requirements of procedural due process. Mot. at 16–17.

The CBA states that "all grievances"—defined as written complaints by employees that express their belief that there is a "violation of, misinterpretation of, or inequitable application of" the provision of the agreement—arising under and during the existence of the agreement "shall be settled in accordance with the procedure" that the agreement provides. Police CBA at 4 (Dkt. 39-3). The CBA then describes a four-step grievance procedure. Id. At step one, the employee

9

discusses his or her grievance with his or her supervisor. Id. If the grievance is not settled, the union may, at step two, reduce the grievance to writing and request a meeting with the chief steward and the police chief. Id. If the grievance is still not settled, the union may, at step three, request a meeting between the teamster business representative and the police chief to review the matter. Id. at 4–5. Finally, the union may submit the grievance to arbitration, at step four. Id. at 5.

Courts have held that grievance procedures outlined in collective bargaining agreements provide employees with sufficient procedural due process. See Rhoads v. Bd. Of Educ. Of Mad River Local Sch. Dist., 103 F. App'x 888, 897 (6th Cir. 2004); Dykes v. Southeastern Penn. Transp. Auth., 68 F.3d 1564, 1572 n.6 (3d Cir. 1995); Armstrong v. Meyers, 964 F.2d 948, 951 (9th Cir. 1992).

Bartynski's arguments that the CBA does not satisfy due process requirements lack merit. He does not identify what particular process was deficient or elaborate on how exactly the City deprived him of due process. Rather, he states that the City's "conduct is a constitutional tort whatever procedural safeguards were available" and that the City "may not punish or retaliate against a Plaintiff for testifying truthfully, whatever limited CBA remedies are available." Resp. at 19–20. But that statement fails to distinguish between substantive and procedural due process claims. "While procedural due process principles protect persons from deficient procedures that lead to the deprivation of cognizable liberty interests, . . . substantive due process provides that, irrespective of the constitutional sufficiency of the processes afforded, government may not deprive individuals of fundamental rights unless the action is necessary and animated by a compelling purpose." Bartell v. Lohiser, 215 F.3d 550, 557–558 (6th Cir. 2000). The assertion that the City cannot punish or retaliate against Bartynski, whatever process it afforded, is directed at a substantive due process claim.

10

Bartynski also contends that the CBA does not provide for damages or address retaliation for giving truthful testimony. He does not cite any authority in support of the argument that those alleged deficiencies in the CBA equate to a deprivation of procedural due process. Three factors are relevant in determining what process is due in a particular situation: (i) "the private interest that will be affected"; (ii) "the risk of an erroneous deprivation through the procedures used and the probable value, if any, of any additional or substitute procedural safeguards"; and (iii) "the Government's interest." Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Bartynski also does not explain how those alleged deficiencies in the CBA deprived him of a protected interest that can form the basis of a procedural due process claim—specifically, either a protected property interest, which is "not created by the Constitution" but rather is created and has its dimensions defined "by existing rules or understandings that stem from an independent source such as state law," Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972), or a protected liberty interest, which includes "the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, . . . and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men," id. at 572.

Bartynski has not presented enough evidence that would permit a reasonable jury to find that the City deprived him of procedural due process. The City is entitled to summary judgment on the procedural due process claim.

**D. Municipal Liability**

Because Bartynski has not come forward with evidence sufficient to create a genuine dispute of material fact that the City violated his constitutional rights, he cannot maintain a Monell claim against the City. See Heyerman v. Calhoun Cnty., 680 F.3d 642, 648 (6th Cir. 2012) (explaining that municipal liability attaches only "where a custom, policy, or practice attributable to the

11

municipality was the 'moving force' behind the violation of the plaintiff's constitutional rights.").[5] The City is entitled to summary judgment on his Monell claim.

### III. CONCLUSION

For the reasons set forth above, the Court grants the City's motion for summary judgment (Dkt. 39).

SO ORDERED.

Dated: August 4, 2023  
Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

---

[5] Because the Court finds that a reasonable jury could not infer that an underlying constitutional violation occurred, it need not address the City's argument that, even if Bartynski established a violation of his constitutional rights, he has not demonstrated that any violation occurred through an official policy or custom, as is required for municipal liability.